## B. ADAMS v. D. O. HITNER, JR.

## J. C. HAND ET AL. v. D. O. HITNER, JR.

APPEALS BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
OF MONTGOMERY COUNTY.

Argued February 5, 1891—Decided February 16, 1891.

1. In an issue to determine the validity of the transfer of a mortgage by
a father to a son, at a time when the father was alleged to be insolvent,
a note not shown to be connected with the creditor's judgment, and
signed, not by the father but by a firm of which he was a member, is
inadmissible as irrelevant.

2. A contract between father and son, providing for an unreasonable and
extravagant compensation for the services of the son, is not fraudulent,
as matter of law; if made when the father is possessed of large means
and believed himself solvent, it would not be a fraud in law, or in fact,
unless made to defraud future creditors.

3. Where a preferred creditor receives from his debtor real estate and
personal property amounting nominally to $23,750, in settlement of an
indebtedness of $20,935.10, the court cannot declare, as matter of law,
that the transaction was fraudulent; whether there was fraud in it or
not was a question of fact for the jury.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 141, 163 July Term 1890, Sup. Ct.; court below,
No. 94 October Term 1889, from 2 Eq. D. 233, C. P.

On March 31, 1887, B. Adams and James C. Hand & Co.
entered judgments by confession against Daniel O. Hitner, for
$4,000 and $5,500 respectively, and afterwards issued attach-
ments in execution thereon, served upon Charles L. Hamilton,
as garnishee. Afterwards Mr. Hamilton, the garnishee, filed
a bill in equity against Daniel O. Hitner, the judgment de-
fendant, Daniel O. Hitner, Jr., B. Adams and James C. Hand
& Co., averring in substance that on October 25, 1886, Daniel
O. Hitner conveyed certain real estate to the said Hamilton,
taking as part of the consideration a mortgage upon the land
for $10,000, and that on March 7, 1887, said mortgage was as-
signed by Daniel O. Hitner to Daniel O. Hitner, Jr.; praying
for a decree that the parties interplead. On March 7, 1890, an

order was made directing issues, wherein the attaching creditors were plaintiffs, and Daniel O. Hitner, Jr., defendant, to determine the ownership of the bond and mortgage and the interest then due thereon.

At the trial of the issues together, on March 10, 1890, the plaintiffs, introducing testimony tending to show that, at the time the mortgage was transferred to the defendant in the issues, his father, the said Daniel O. Hitner, was largely indebted and insolvent, offered in evidence a " note of D. O. & H. S. Hitner, dated January 1, 1878, at one year, for $4,000, in favor of David Adams, and the indorsements of interest on that note up to March 30, 1887, as that debt for which the judgment of $4,000 to D [B?] Adams was confessed by Daniel O. Hitner." Objection being made, the offer was refused; exception.[1]

Various other offers of evidence on the part of the plaintiffs were refused; exceptions.[2 to 6]

On the part of the defendant, testimony was introduced to the effect that in March, 1879, the defendant was in his father's marble yard at Ninth street and Columbia Avenue, Philadelphia; that his father desired him to go to superintend his father's three iron furnaces, and that a contract was made whereby the defendant was to go to the furnaces to attend them, and when they were running he was to receive fifty cents per ton on all the iron that was made, and a living; the living was to come out before anything else; that, when the furnaces were out of blast, he was to get nothing but the living; that the defendant's pay was not to be drawn out, but was to remain at interest; and that the witness superintended the furnaces afterward under that contract. It was shown, further, that the mortgage was transferred to the defendant in part payment of indebtedness due to the defendant from his father for sevices under said contract, and that subsequently, to wit, on May 27, 1887, when other property, real and personal, was transferred to him, in payment of the balance of his claim, a statement of the account was made up by the conveyancer and executed by his father, which was as follows :

" Daniel O. Hitner, Jr.,

with Daniel O. Hitner.

" From June 1879 to March 1883, Daniel O. Hitner, Jr.,

superintended the iron business for Daniel O. Hitner, at the value of fifty cents a ton for all iron made, in addition to his living expenses, said Daniel O. Hitner holding all said moneys for said D. O. Hitner, Jr., at interest.

"The amount of iron made was 30,203 tons,    .    $15,101.50

"Interest on same, averaged to March 1883,    .    .

at an average of 6000 tons a year,    .    .    .    1,080.00

"Interest on total amount from March 1883,    .    .

four years and two months, .    .    .    .    .    3,753.60

"Cash loaned to D. O. Hitner by D. O. Hit-    .    .

ner, Jr., being money received by Mrs. D. .    .

O. Hitner, Jr., from her mother,    .    .    .    1,000.00

$20,935.10

"The above is a correct statement of indebtedness due by me to D. O. Hitner, Jr., and in satisfaction and settlement of which I have conveyed and transferred to him certain real and personal property.            DANIEL O. HITNER."

On the part of the plaintiffs it was claimed from the testimony that the contract of employment, referred to in the defendant's case, if it ever was made, which was denied, provided for an excessive allowance and was fraudulent as to creditors, and that the value of the property, real and personal, turned over to the defendant in payment of the alleged indebtedness, was fraudulently excessive, being estimated as follows:

Value of the mortgage,    .    .    .    .    $10,250

real estate,    .    .    .    .    13,000

carts, tools, etc.,    .    .    .    500

$23,750

At the close of the testimony, the court, SWARTZ, P. J., charged the jury, answering certain points presented by the plaintiffs as follows:

1. The uncontradicted evidence, in this case, being that the alleged contract between Daniel O. Hitner, Sr., and Daniel O. Hitner, Jr., was kept hidden and concealed, and unexecuted until the eve of his bankruptcy, constitutes a fraud in law, and your verdict must be for the plaintiffs.

Charge of Court below.

Answer: This is refused.[14]

2. If the jury believe that Daniel O. Hitner, Sr., was deeply indebted and on the eve of bankruptcy, when he transferred the mortgage in question to his son Daniel O. Hitner, Jr., and that Daniel O. Hitner, Jr., had then no visible means of paying for it, a presumption of fraud is created which the defendant must rebut, by clear evidence, or else stand convicted.

Answer: This is true. The jury may infer fraud in the transaction, if the testimony shows that Daniel O. Hitner, Jr., was known not to have the means to pay for the mortgage. But the jury cannot consider but part of the evidence bearing upon this question. They must determine from all the facts in evidence whether Daniel O. Hitner, Jr., had a bona fide debt against his father, and took property from him at a fair price on account of the payment of such debt.[15]

5. If the jury find that the effect of the alleged contract, and its concealment, between Daniel O. Hitner, Jr., and Daniel O. Hitner, Sr., was to hinder, delay and defraud creditors, then your verdict must be for the plaintiffs.

Answer: This is refused.[16]

6. Under all the evidence in this case, the verdict of the jury must be for the plaintiffs.

Answer: That is refused.

7. The uncontradicted evidence being that the business of Daniel O. Hitner ceased in 1883, the jury have a right to infer, in the absence of express proof to the contrary, that the insolvency existed prior to the alleged contract.

Answer: This is refused; but, as I have already stated to you, it seems to the court immaterial whether there was, or was not, insolvency, or impending insolvency, at that time, unless the jury should find that there was an intent, when this contract was made, to hinder, delay, or defraud subsequent creditors.

8. If the jury believe that the alleged contract was unreasonable, and more than a fair compensation for the services of the defendant, then, being unexecuted until after the insolvency, it would be a fraud in law, and your verdict must be for the plaintiffs.

Answer: This is refused. It would be true, if the plaintiffs had been creditors of Daniel O. Hitner, Sr., at the time the

contract was made, or if the contract had been made with intent to defraud subsequent creditors, such as the plaintiffs in this issue.[17]

9. The uncontroverted testimony showing that the defendant took transfers of property for $2,814.90 more than under his own alleged contract and settlement he was entitled to, the whole transaction is in law a fraud, and your verdict must be for the plaintiffs.

Answer: This is refused.[18]

10. The whole claim, as alleged by defendant, amounting to $20,935.10, and the transfers of property amounting to $23,750, the plaintiffs are entitled, under any view of the case, to a verdict in their favor for $2,814.90 of said mortgage.

Answer: This is refused.  No such verdict can be rendered in this issue.[19]

—The jury returned a verdict in each issue in favor of the defendant.  Judgment having been entered, the plaintiffs took these appeals, assigning for error:

1–6. The refusal of plaintiffs' offers. [1 to 6]

14–19. The answers to the plaintiffs' points [14 to 19]


*Mr. Jas. B. Holland* and *Mr. B. E. Chain* (with them *Mr. Henry Freedley*), for the appellants.

Counsel cited: Zerbe v. Miller, 16 Pa. 495 ; Nonantum Worsted Co. v. Webb, 124 Pa. 125 ; McClenachan's Case, 2 Y. 506 ; Kaine v. Weigley, 22 Pa. 183 ; Penna. Canal Co. v. Harris, 101 Pa. 93 ; Dornick v. Reichenback, 10 S. & R. 90 ; Shontz v. Brown, 27 Pa. 128 ; Kimmel v. McRight. 2 Pa. 38 ; Whiting v. Johnson, 11 S. & R. 328.


*Mr. Charles Hunsicker* and *Mr. C. H. Stinson.* for the appellee.


PER CURIAM:

There was little in these cases save questions of fact which have been settled by the jury.  Complaint is made, however, in the first assignment, of the rejection of the note of $4,000. It was offered as the basis of the judgment confessed to plaintiff Adams, and the obvious purpose was to show that Daniel O. Hitner was indebted to Adams in this amount at the time he,

Hitner, transferred the mortgage of $10,000 to his son. There was nothing, however, to connect the note with the judgment. It was not the individual note of Hitner, but was made by D. O. & H. S. Hitner. In addition, there was no offer to follow it up by evidence that the judgment was confessed for this note. We think the offer was properly rejected.

The assignments from 2 to 6, inclusive, relate to the rejection and admission of testimony. After a careful consideration of them, we are unable to find error in either. A discussion of them in detail would not be profitable.

The remaining assignments allege error in the charge and the answers to points. While these assignments are numerous, they all point to the question of the alleged fraud in the transfer of the mortgage before referred to. The pivotal point in the case was the validity of the contract between Daniel O. Hitner and his son, who is the defendant, for the services of the latter. It was claimed by the plaintiffs that the compensation was extravagant, and an evidence of fraud. They asked the court to charge: " If the jury believe that the alleged contract was unreasonable, and more than a fair compensation for these services of the defendant, then, being unexecuted until after the insolvency, it would be a fraud in law, and your verdict must be for the plaintiffs." To which the learned judge replied: " This is refused. It would be true, if the plaintiffs had been creditors of Daniel O. Hitner, Sr., at the time the contract was made, or if the contract had been made with intent to defraud subsequent creditors, such as the plaintiffs in this issue." We are unable to see any error in this ruling. If, at the time Mr. Hitner made this arrangement with his son, he was possessed of large means, and believed himself solvent, it would not be a fraud in law, or in fact, if it was not done for the purpose of defrauding future creditors.

Complaint was also made that the defendant took property in excess of his claim to the extent of $2,814.90, and the court was asked to charge that the transaction was fraudulent. This request was refused. See eighteenth and nineteenth assignments. We cannot say it was error to refuse this instruction. It is true that in the settlement of May 27, 1887, the defendant took transfers of property amounting nominally to $23.750 in settlement of a claim of $20,935.10, but the court could not

say, as a matter of law, that the transaction was fraudulent. A portion of the property consisted of real estate, tools, and cars, upon which a certain value was placed. Some of the property may not have been worth the valuation arbitrarily placed upon it, and whether there was any fraud in it was for the jury. In each case,

The judgment is affirmed. ·